# EXHIBIT A

JUSTIN D. HEIDEMAN (USB #8897)
**HEIDEMAN & ASSOCIATES**
2696 North University Avenue, Suite 180
Provo, UT  84604
Telephone:  (801) 472-7742
Fax:  (801) 374-1724
Email: jheideman@heidlaw.com
*Attorneys for Plaintiff Samuel Jacob Gouchenour, Jr.*

## IN THE FOURTH JUDICIAL DISTRICT COURT
## IN AND FOR UTAH COUNTY, STATE OF UTAH

| | |
|---|---|
| SAMUEL JACOB GOUCHENOUR, JR., an individual, | **COMPLAINT** |
| Plaintiff, | |
| v. | Tier 3 |
| | Case No: |
| BRIGHAM YOUNG UNIVERSITY, a Utah non-profit corporation, and DOES 1 through 10, | Judge: |
| Defendants. | |

COMES NOW Plaintiff, Samuel Jacob Gouchenour, Jr. ("Plaintiff"), by and through

undersigned counsel of the law firm Heideman & Associates, and hereby complains and alleges

against Defendant Brigham Young University and DOES 1 through 10 as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     At all times relevant hereto, Plaintiff Samuel Jacob Gouchenour, Jr. was a

resident of Utah County, State of Utah.

2.     Defendant Brigham Young University (hereafter "BYU") is a corporation owing

its existence to the laws of the state of Utah.

3.      The true names and capacities, whether corporate, associate, individual or otherwise of Defendants, DOES 1 through 10, are presently unknown to Plaintiff.  Each of the Defendants designated herein as Doe is legally responsible in some manner for the conduct, events and happenings herein referred to that proximately caused injury and damage to the Plaintiff. The Plaintiff will seek leave of this Court to amend this Complaint once the true names and capacities have been ascertained.

4.      Upon information and belief, Plaintiff contends that the conduct and incidents complained of herein predominantly occurred in the County of Utah, State of Utah.

5.      This Court has jurisdiction in accordance with the provisions of U.C.A. § 78A-5-102(1) (2010 as Amended).

6.      Venue of these claims is properly placed with the Fourth District Court pursuant to Utah Code Annotated § 78B-3-305 and 307 (2008 as Amended).

## STATEMENT OF FACTS

### A.      General Background.

7.      The Plaintiff, who was active in the LDS faith, served a mission for his church in Arizona, commencing in 2013.  While the Plaintiff was on his LDS mission in Arizona, he became aware of and acquainted with the Madeline Jones (hereinafter "Jones"). After the Plaintiff had finished his mission, the pair started dating.  The couple became engaged and ultimately married on August 15, 2015 in a traditional LDS temple ceremony.  The Plaintiff and Jones thereafter lived together as husband and wife and attended the LDS church.  The Plaintiff became a student at BYU after his mission.  Jones also attended BYU.

8.      At no time during the time that the parties lived together, did the Jones complain to friends, family, governmental agency personnel, law enforcement or medical care providers of physical, emotional or sexual abuse as set out in her complaint filed with Defendant University.

9.      The Plaintiff and Jones separated on or about June 26, 2016.  At the time of separation, Jones was pregnant with the parties' child (RWJ, who was born on September 22, 2016).

10.      Upon information and belief, the Plaintiff alleges that Jones, with the assistance of members of her family and Doe Defendants, concocted an illicit plan to discredit the Plaintiff and inflict significant and serious emotional and psychological harm upon him for spite and in order to gain advantage in divorce and custody proceedings that she was filing in the Superior Court of Arizona.

11.      Upon information and belief Plaintiff alleges that a key component of Jones' illicit scheme, plan and conspiracy, was to file a false claim of physical, sexual and emotional abuse against the Plaintiff.  By doing so, Jones attempted to thwart the Plaintiff's education and employment, his standing in the community and his ability to parent the child that Jones was carrying.

**B.      Defendant Jones' Sexual Abuse Claim and Defendant University Proceedings.**

12.      Title IX of the Education Amendments of 1972 essentially prohibits sex discrimination in educational institutions that receive federal funding.  While Title IX is a very short statute, United States Supreme Court decisions and guidance from the U.S. Department of Education have given it a broad scope covering sexual harassment and sexual violence. Under

Title IX, schools are legally required to respond and remedy hostile educational environments and failure to do so is a violation that means a school could risk losing its federal funding.

13.     Although Defendant University claims it is exempt from certain provisions of Title IX because it does not receive federal funding, Defendant University voluntarily put in place a sexual abuse policy that it espoused as Title IX compliant and, substantially mirrored the requirements of Title IX.

14.     At and before Jones filed her complaint against Plaintiff as described below, Defendant University was widely criticized for its failures and inadequacies in handling reports of sexual abuse.  In response, Defendant University amended, revamped and augmented its policies and procedures relating to sexual abuse and hired a new Title IX coordinator and support staff in its "Title IX" offices.

15.     In addition to any legal duties imposed by Title IX on Defendant University in its handling of sex abuse claims, the University, by its own actions, voluntarily created and implemented a Title IX policy relating to sex abuse that became a part of its express and implied contract with the students enrolled at the school. The policy imposes on Defendant University the obligation and duty of prompt and fair handling of sex abuse claims ensuring due process like rights for all those involved. Defendant University's sexual abuse policy explicitly states that it would promptly address and resolve reports of sexual misconduct in a process that would protect the rights of all parties involved in any complaint.  The "Title IX" policy was consistent with Defendant University's duty as contained in its student handbook and other documents embodying the duties of both the University and its students attending there.

16.     Defendant University was receiving a great deal of criticism and exposure relating to its handling of sex abuse cases from persons representing the traditional victims of sex abuse. Because of this, Defendant University's Title IX personnel over-reacted and undertook actions, the effect of which, wrongfully diminished and eclipsed the rights of those accused of sexual abuse. That misconduct was evident in the handling of the Title Nine complaint brought by Jones against the Plaintiff as detailed below.

17.     In the climate described above, and after having been unsuccessful in trying get Plaintiff charged criminally, based on her claims of abuse, Jones, on or about October 18, 2016, filed an abuse complaint with the Title IX office of Defendant University ultimately comprised of more than 323 factual claims describing systematic physical, sexual and emotional abuse on the part of the Plaintiff  essentially from the time of their marriage until their separation.

18.     Having previously failed to convince law enforcement to charge Plaintiff criminally, Jones turned to the Title Nine Office at Defendant University and enlisted her family and other co-conspirators to fabricate evidence bolstering Jones' false claims.

19.     In addition, because of the lack of independent corroborating evidence of her claims, Jones researched and investigated how to create a personal journal, months after her initial complaint to the University's Title Nine office, to make it appear legitimately written over the course of a long period.  During her cohabitation with the Plaintiff, Jones did not start, possess or maintain the journal that became the centerpiece of the sex abuse investigation conducted by Defendant University. It was during the late stages of the investigation by Defendant University that Jones created the fake journal ostensibly detailing the events

comprising abuse that occurred over the course of the parties' relationship. The journal was a fake and the abuse entries contained therein were false.

20.     In addition to making repeated false statements to investigators and providing endless rounds of false and misleading evidence, Jones continued to use family members and other co-conspirators to support her claims of Plaintiff's deviancy and misconduct. Upon information and belief, Plaintiff alleges that the family members and Doe Defendants made false statements to representatives of Defendant University, medical personnel and to law enforcement agencies regarding the matter.

21.     The actions taken by Defendant University to investigate and process Jones' sexual abuse claim are detailed in the Title IX Investigator's Findings and Recommendations dated April 12, 2017.  The decision of the Defendant University's Title IX office is contained in the letter of the Title IX Coordinator Tiffany Turley's letter of April 17, 2017 to the Plaintiff.

22.     The Defendant University, upon finding that the Plaintiff had engaged in sexual abuse, issued a minimum suspension of two years. The Plaintiff thereupon used all avenues available to him to appeal, using the mechanisms and processes detailed in the University's policies and procedures.  The Plaintiff's claims on appeal are detailed in the Plaintiff's Appeal of the 4/12/2017 Decision and supplement thereto together with concurrent correspondence addressing the same. Defendant University found against Plaintiff, and changed their original sanction from suspension to expulsion from the University.

23.     In sum, the allegations of the Defendants Jones, that the Plaintiff sexually abused her as defined by the University's policies, are false.  The journal Jones submitted to the

University was fake and was created after her separation from Plaintiff.   The evidence submitted by Jones purporting to support allegations of abuse was manufactured, contrived or unfairly manipulated and/or distorted.   Defendant University, by its action and inaction, as summarized below, failed to make even a perfunctory effort to ferret out Jones' fraudulent misconduct and failed to afford Plaintiff legitimate due process.

24.     Upon information and belief, Plaintiff alleges Defendant University's misconduct includes, but is not limited to, the following:

A.     Defendant University allowed an unexplained delay and transfer of this case during the course of the investigation, in violation of their own policies, which tainted other investigators from making independent findings, and which allowed the very late entry of an unoriginal journal into evidence.

B.     Defendant University's investigators failed to apply any reasonable evidentiary standard to materials submitted by Jones.  Investigators appeared to accept and give significant weight to hearsay statements by persons lacking personal knowledge of the material facts at issue.  There was no requirement imposed by investigators to provide corroborating evidence of statements which were speculative, conclusive and hearsay.

C.     Defendant University's investigators did not comply with the University's own policies by failing to key in on the existence or nonexistence of independent evidence.

D.     Despite a clear reliance by investigators on the journal in their findings against Plaintiff, Defendant University failed to allow the Plaintiff to adequately access the journal during the investigation for examination and for forensic study. Investigators also failed to require the original of the copied journal submitted by Jones, and failed to consider the significant conflicts between Jones' claims, and other legal, medical and law enforcement evidence.

E.     Investigators continually failed to provide the Plaintiff with the materials required to adequately respond to Jones' allegations. Upon information and belief, Plaintiff alleges that the investigators failed to provide the Respondent with the evidence submitted by Jones until four months after it had been provided to the investigator

and after the time for processing the claim had expired, as per the University's policies. Jones filed the complaint in October 2016 but Plaintiff did not receive the parsed out evidence supporting the complaint until the end of March 2017—just as final projects were due and preparations for finals had begun.

F.      Jones Complaint asserted inappropriate conduct between Plaintiff and a minor, when Plaintiff was on his mission.  Thereafter, investigators for Defendant University communicated to Plaintiff that the mission material was not relevant to and would not be considered as part of a Title IX investigation.  Yet, it was included in the decision against Plaintiff without an adequate response by Plaintiff who thought he did not need to address the issue.

G.      Plaintiff should have been given the same right to submit responsive material as was Jones. Fairness dictated that Plaintiff be allowed some measure of traditional discovery methods.  The breadth and scope of the allegations over such a long period of time required that Plaintiff be given a right to confront and cross examine witnesses in some form.  The sheer volume of material in this case prevented the use of any summary determination of credibility, value and a weighing of conflicting claims and evidence.

H.      The investigators never provided the Plaintiff with a summary of the allegations reducing the meandering narratives and unorganized presentation of events and claims to an understandable complaint.  Given that the investigator making the findings in this case pointed to 323 facts and events as being relevant, it was unfair, callous and cruel to require anyone to respond in ten pages and be subject to summary review of reams of information by a lay investigator with limited experience and training.

I.      Given the failures summarized above, the University's investigators and Title IX coordinator abused their discretion in concluding that Plaintiff was guilty of the sexual abuse alleged by Jones. A review of the evidence and the flaws related thereto simply do not reasonably support a conclusion that the Plaintiff violated Defendant University's policies.  There were no legitimate findings.  Rather, everything Jones submitted to the University was accepted by the investigator and Title IX coordinator as true.

J.      Investigators would not allow Plaintiff even to have a copy of the copy of the journal until after their decision against Plaintiff.  Thus, Plaintiff was only able to argue the conflicts between the journal and other conflicting evidence on appeal of the decision, which appeal carried a higher burden of proof against Defendant.

25.        The conduct of the Defendants systematically denied the Plaintiff a timely

and fair due process of the serious accusations against him.

**C.        The Findings of the Arizona Divorce Court.**

26.        As noted herein, Jones filed for divorce in 2016 in the Superior Court of Arizona,

Maricopa County, *In re the Marriage of Madeline F. Jones and Samuel Jacob Gouchenour, Jr.,*

Case no. FC2016-090994.  Trial in that case was held on May 18 and 19, 2017 and a final

Decree of Dissolution was entered on June 5, 2017.

27.        The divorce court, after two days of testimony and review of proposed exhibits

and other evidence, found explicitly that Jones' allegations of sexual deviancy, abuse and mental

illness against the Plaintiff, were patently false. The Court found that Jones had engaged in

serious misconduct, even to the extent of filing false reports with law enforcement officials

aimed at sabotaging the Plaintiff's interests in the proceedings.   The court further found that the

Plaintiff had no mental deficiencies or other problems that would interfere with his parenting of

the parties' infant child.

28.        The divorce court found that Jones made a false report to law enforcement of

Child abuse by the Plaintiff.  Further, the court found that Jones' mother had fabricated the abuse

and neglect allegations made against the Plaintiff while the parties were in Montana.

Specifically the court found that the claim that Jones was denied access to food and water for

over 15 hours was actually recanted by Jones and was totally inconsistent with witness accounts.

The same finding was made by the court with regard to Jones' claim that she was made to walk

in the mud and freezing rain. The court found the allegations that complaints were made to law enforcement in Montana were unfounded.  In fact, the court noted that Jones and her family improperly obtained a Protective Order in Montana and that the same was dismissed. The court found that Jones and her family improperly used court proceedings to preclude Plaintiff from seeing his child.

29.    The divorce court found that Jones' submissions of medical records did not support her claims of abuse and in fact, that the medical records supported the Plaintiff's position that he was not guilty of any kind of abuse or misconduct. The Court found that Jones' mother and grandmother had falsely filed police reports alleging child abuse on the part of Plaintiff.

30.    The divorce court then found that Jones' claims of prevalent, disturbing and violent sexual abuse during the marriage were simply not believable given the evidence before the court. The court noted that Jones reported to her physician that there was no abuse. The Court found that there was no evidence of contemporaneous reports of abuse to friends, family, or law enforcement.  Rather, the court stated that the evidence was just the opposite.

31.    The Arizona Court was aware of the Proceedings being conducted by the Defendant University against Plaintiff, and stated that is could not find that the issues pending were fully and fairly litigated in the University's process.  The court found that Defendant Jones' testimony was not reliable and that the Court could not accept "any aspect" of her testimony. The only act that the court found the Plaintiff committed was denying Jones access to a cell phone on a particular occasion. Yet, the University Title Nine investigators had in their possession, or had a reasonable opportunity (and obligation) to obtain, much of the same evidence in their

investigation as did the Arizona Court, and they failed to fairly consider it.  The burden of proof

was also the same in both proceedings.  The Defendant University found Jones' claims of abuse

to be credible to a preponderance of the evidence, and the Arizona Court found that Jones'

claims of abuse were **not** credible by the same evidentiary standard.

**D.      Plaintiff's Resulting Injury and Damage.**

32.     As a result of the described misconduct and actions of the Defendants, the

Plaintiff has and will continue to suffer significant and permanent injury and damage for which

he has a right to recover against the Defendants.

33.     The Plaintiff should be awarded judgment for the economic or special damages as

may be established upon proof at trial.

34.     The Plaintiff should be awarded judgment for consequential and non-economic

(general) damages for mental anguish, psychological injury and associated damage and injury as

allowed by law in sufficient sum to compensate the Plaintiff for his damage.

35.     The Plaintiff has been required to retain an attorney to represent him in these

proceedings and has agreed to pay a reasonable fee associated therewith.

36.     The Plaintiff should be awarded prejudgment interest as allowed by statute and

interpreting case law on all special damages from the date the damages were incurred to the date

of judgment and thereafter at the judgment rate.

37.     The conduct of Jones and the Doe Defendants was intentional and malicious and a

gross deviations from acceptable conduct.  The conduct of the Defendants warrants the

imposition of punitive damages in order to compensate the Plaintiff, punish the Defendants, and

serve as a warning to others similarly situated not to engage in similar conduct.  The Defendants'

conduct, as more fully described herein, was willful and malicious or intentionally fraudulent, or

it manifested a knowing and reckless indifference toward, and a disregard of, the rights of others.

**FIRST CAUSE OF ACTION**
**Breach of Implied and Express Employment Contracts**
**(*Defendant University*)**

38.     The Plaintiff realleges and incorporates herein by reference all previous and

subsequent paragraphs, as though set forth in fully herein.

39.     Defendant University, through its agents, employees and representatives acting

within the scope of their responsibilities, violated and breached the terms of the express and

implied contracts between Plaintiff and the Defendant as described herein.

40.     Plaintiff had an actual and implied contract with the university, for which he had

given due consideration.  Under that actual and implied contract, upon the filing of a sex abuse

complaint against him, Plaintiff had a contractual right to a prompt and equitable investigation

and resolution of sexual misconduct allegations. These procedures were to include at a

minimum, a prompt, fair and impartial process throughout by officials who did not have a

conflict of interest. Further the actual and implied contract required that the officials involved in

the process by Defendant University have adequate training and experience.  The actual and

implied contract required providing to Plaintiff his recognized due process rights.  The implied

contract required an enlargement of those rights once the Defendant University allowed Jones to

violate major provisions of the policies and procedures.  The Defendant BYU systematically

denied all of the above rights, and other contractual rights to which Plaintiff was entitled.

41.     As a result of the Defendants, breach of their implied and express contracts with Plaintiff, he has suffered the damage and injury outlined above.

<u>SECOND CAUSE OF ACTION</u>
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
(*Defendant University*)

42.     Plaintiff incorporates herein by reference all previous and subsequent paragraphs, as though set forth in fully herein.

43.     The Defendant University, acting through its agents, employees, and representatives acting within the scope of their responsibilities, in its dealings with the Plaintiff as outlined herein, failed to deal with the Plaintiff fairly and in good faith.

44.     As a result of the Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered injury and damage as set forth herein.

<u>THIRD CAUSE OF ACTION</u>
**Intentional Infliction of Emotional Distress**
(*Defendant Does*)

45.     Plaintiff incorporates herein by reference all previous and subsequent paragraphs, as though set forth in fully herein.

46.     The Defendant Does, by the conduct described herein intentionally engaged in misconduct toward the Plaintiff with the purpose of inflicting emotional distress.  The Defendant Does knew or should have known that the misconduct would result in emotional damage.  The misconduct of Does was outrageous and intolerable in that it offends generally accepted standards of decency and morality.

47.        As a result of the Defendant's misconduct, Plaintiff has suffered injury and damage as set forth herein.

## FOURTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
### (*Defendant University and Defendant Does*)

48.    Plaintiff incorporates herein by reference all previous and subsequent paragraphs, as though set forth in fully herein.

49.    The Defendant University and Defendant Does, by their misconduct described herein negligently inflicted emotional distress on the Plaintiff under circumstances where the Defendants should have realized that their conduct involved an unreasonable risk of causing the distress. The misconduct of Defendants was outrageous and intolerable in that it offends generally accepted standards of decency and morality.

50.    As a result of the Defendant's misconduct, Plaintiff has suffered injury and damage as set forth herein.

## FIFTH CAUSE OF ACTION
### Defamation
### (*Defendant University and Defendant Does*)

51.    Plaintiff incorporates herein by reference all previous and subsequent paragraphs, as though set forth in fully herein.

52.    Defendants published statements about Plaintiff which were false and defamatory.

53.    Defendant defamatory statements were made intentionally, with knowledge that they were false.

54.     Defendant defamatory statements about Plaintiff caused Plaintiff injury and damage as set forth herein.

55.     Defendant Jones' defamatory statements were made willfully and maliciously, and thus warrant punitive damages.


WHEREFFORE Plaintiff prays judgment against the Defendants as follows:

1.     For special or economic damages as may be established by the evidence at trial.

2.     For general or noneconomic damages as may be established by the evidence at trial.

3.     For prejudgment interest as allowed by law.

4.     For all reasonably incurred attorney fees and costs.

5.     For punitive damages as allowed by law.

6.     For such other and further relief as to the court is just and proper.

SIGNED AND DATED: <u>April 9, 2019.</u>

**HEIDEMAN & ASSOCIATES**
*/s/ Justin D. Heideman*
JUSTIN D. HEIDEMAN
Attorney at Law
